## HANNA FURNACE CORPORATION v. UNITED STATES.
### No. 43293.

Court of Claims.
Feb. 5, 1940.

Ralph Ulsh, of Buffalo, N. Y. (Slee, O'Brian, Hellings & Ulsh, of Buffalo, N. Y., on the brief), for plaintiff.

S. E. Blackham, of Washington, D. C., and Samuel O. Clark, Jr., Asst. Atty. Gen. (Robert N. Anderson and Fred K. Dyar, Sp. Assts. to Atty. Gen., on the brief), for defendant.

Before WHALEY, Chief Justice, and WILLIAMS, LITTLETON, GREEN, and WHITAKER, Judges.

WHITAKER, Judge.

Plaintiff's suit is based on two grounds: (1) It alleges that the Commissioner, in computing the taxpayer's liability for 1918, erroneously decreased its invested capital by deducting in prior years depreciation on certain of its blast furnaces prior to the time they had been completed and put in operation; and (2) that no deduction was taken for depreciation on the linings of its blast furnaces in the taxable year.

The defendant defends on the ground, among others, that no claim for refund on these grounds was filed within the statutory period. The plaintiff replies to this that a general claim for refund was filed within the statutory period and that this was subsequently amended to include these grounds.

No claim filed with the Commissioner ever specifically stated that depreciation had been deducted in prior years on certain of its blast furnaces before they had been completed and put in use, but the plaintiff says that some of its amendments were broad enough to cover this allegation. The first claim with respect to depreciation on furnace linings was made on August 30, 1933.

We think this amendment came too late for two reasons: first, because the Commissioner had previously rejected plaintiff's claim for refund; and, second, if his action did not amount to a rejection thereof, still, the former general claim had previously been amended on a specific ground, which did not include a claim for depreciation on furnace linings, and was not subject to further amendment.

Plaintiff filed a general claim for refund on February 26, 1924. This was filed under these circumstances: When the taxpayer filed its income-tax return for 1918 it decreased its invested capital by the sum of $2,300,936.36 on account of depreciation which the Commissioner had found had accrued in years prior to 1917. About two years later the taxpayer came to the conclusion that this was too much depreciation to have been deducted and filed an amended return reducing the amount of depreciation to $532,677.10. This resulted, of course, in an increased invested capital for the year 1918 and a smaller amount of tax due. Accordingly, the taxpayer filed a claim for refund on June 24, 1921, for $137,403.51.

After auditing the taxpayer's returns the Commissioner wrote it on October 11, 1922, setting forth his computation of its tax liability. In this letter he deducted depreciation at the rate of 5 percent for the year 1918 and for years prior thereto. About a year later, however, the Commissioner wrote the taxpayer another letter setting forth a recomputation of the taxpayer's liability, which differed from his former computation chiefly because he applied a rate of depreciation of 2 percent for the year 1918 and prior years instead of 5 percent. The taxpayer protested against this action, and at a conference with the Commissioner tentatively agreed with him on a rate of depreciation of 5 percent, as originally used by him, and, generally, that his computation in his letter of October 11, 1922, with slight adjustments, was correct.

At this conference certain additional facts were requested by the Commissioner, which were furnished him by the taxpayer on February 18, 1924, and at the same time the taxpayer set forth its recomputation of its tax liability, using the rate of 5 percent in computing depreciation, instead of 2 percent. The taxpayer also stated in its communication that it was filing a claim for refund to protect its rights under

the statute of limitations. This claim was filed on February 26, 1924, and is the general claim upon which the plaintiff relies in this suit.

Subsequent thereto the Commissioner wrote the taxpayer adopting the taxpayer's computation of its tax liability, which showed an overpayment of tax of $2,231.16. This amount was refunded to the taxpayer on June 3, 1924. This refund was made on the claim filed on June 24, 1921, and no mention was made of the general claim filed on February 26, 1924, but apparently the parties considered this as a final adjustment of the taxpayer's liability because no further action was taken with reference thereto for more than three years. However, shortly prior to the time that the taxpayer went into bankruptcy, and apparently in preparation therefor, it filed with the Commissioner a paper entitled, "Claim for adjustment of Income and War Profits Taxes for years 1910 to 1918, both inclusive, under the provisions of Section 284, Paragraph (c), of the Revenue Act of 1926," in which a refund was claimed in the amount of $68,564.43. This did not mention the general claim of February 26, 1924. This claim was subsequently listed by the taxpayer in its schedules filed in the bankruptcy proceedings.

It is doubtful whether or not the taxpayer under the law was entitled to file this claim. It was not entitled to do so as an original claim, since the statute had long since run, and it is questionable whether or not it could have filed it as an amendment to its claim of February 26, 1924, since the Commissioner's action in refunding to the taxpayer the $2,231.16 was evidently intended to be final action on the taxpayer's liability for that year, and if final action, by implication the claim of February 26, 1924, was thereby rejected. We have no doubt that when this refund was made the Commissioner overlooked the fact that the taxpayer had filed this claim of February 26, 1924.

But even if the taxpayer did have the right to file this claim on June 21, 1927, as an amendment to its claim of February 26, 1924, we think this claim, as amended, was rejected by the Commissioner on September 17, 1927. On that date the Commissioner wrote the taxpayer stating that the amounts claimed were not allowable because they had been previously allowed, and the letter concluded with the statement: "Your returns for these years are therefore considered closed." He made no reference to the claim for refund of February 26, 1924, but we think that his statement, "Your returns for these years are therefore considered closed," under all the circumstances, amounts to a rejection of this claim. Plaintiff's returns could not be closed so long as there was a claim for refund outstanding.

It is evident that the parties themselves so understood the Commissioner's action, because nothing further was done in the matter for nearly six years.

We do not regard it as essential that the Commissioner in so many words should say that the claim was disallowed or that a disallowance of it should appear on a schedule signed by the Commissioner. Pratt & Whitney Co. v. United States, 80 Ct.Cl. 676, 681, 6 F.Supp. 574, 10 F.Supp. 148; United States v. Bertelsen & Peterson Engineering Co., 306 U.S. 276, 280, 59 S. Ct. 541, 83 L.Ed. 647; Savannah Bank & Trust Co. v. United States, 75 Ct.Cl. 245, 248, 58 F.2d 1068. The only requirement of the law at that time was that the Commissioner should notify the taxpayer of his action by mail. This he did.

On June 27, 1933, the taxpayer apparently discovered that there had been no formal action on its claim of February 26, 1924, and undertook to reopen it, but we think its long silence prior thereto shows that at the time the Commissioner acted in 1927 the taxpayer treated that as final action and, therefore, as a rejection of its outstanding claim. It is clear the Commissioner so intended it.

If the taxpayer's claim had been rejected, it, of course, was not subject to later amendment after the statute had run.

■ But whether or not we are correct in the foregoing, we think the taxpayer's amendment of August 30, 1933, when it first claimed depreciation on its furnace linings, came too late. The amendment of plaintiff's general claim on June 21, 1927, if such it can be treated, was based upon the Commissioner's alleged error in decreasing its invested capital for 1918 by the deduction of excessive depreciation in prior years. This, of course, did not include the allegation that he did not allow any depreciation on furnace linings for the taxable year.

■ When the taxpayer amended its former general claim it then became a specific one, and under the decisions of the Supreme Court in United States v. Henry

Prentiss & Co., Inc., 288 U.S. 73, 53 S.Ct. 283, 77 L.Ed. 626, and United States v. Factors & Finance Co., 288 U.S. 89, 53 S.Ct. 287, 288, 77 L.Ed. 633, it could not later, after the statute had run, be amended by bringing in new and unrelated matter. In the last cited case the court said: "This is not a case where the grounds injected by the amendment have already been abandoned by agreement tacit or express. Such abandonment and agreement there was in the Prentiss Case; the claimant seeking at the beginning the privilege of the special method of assessment and reverting thereafter to another ground of challenge which by implication, if not expressly, it had promised to renounce. This is a case where the claimant has left the grounds of challenge open, and where the Bureau has itself to blame for not insisting at the outset upon a full disclosure of the grievance."

 But, with respect to its right to rely on its claim that depreciation was deducted on some of its furnaces prior to their completion, the taxpayer says that its claim for special assessment, included in its general claim of February 26, 1924, called in question the entire valuation of its invested capital, which includes the matter of deducting depreciation on blast furnaces prior to their completion and use, and, therefore, under the authority of Bemis Bros. Bag Co. v. United States, 289 U.S. 28, 53 S.Ct. 454, 77 L.Ed. 1011, it is entitled to later amend its general claim by asserting this specific error.

In the first place, neither the taxpayer nor its successor ever presented this alleged error to the Commissioner; it was first asserted in this suit. The Commissioner's regulations required the taxpayer to set out under oath all the facts relied on in support of its claim, and this regulation was never waived. The law provides that no suit shall be maintained until a claim for refund shall have been filed with the Commissioner according to law "and the regulations of the Secretary of the Treasury established in pursuance thereof." Section 1113, 44 Stat. 116.

In the Bemis Bros. Bag Company case, supra, the ground for the claimed overassessment was specifically stated. No new ground was advanced; only a different form of relief on the same ground was prayed.

In the second place, this claim for special assessment later, and before any action thereon by the Commissioner, was restrict-

ed solely to the claim of an abnormal condition affecting its invested capital; a later amendment complaining of the Commissioner's action in determining its value is not relevant thereto. United States v. Henry Prentiss & Co., Inc., supra.

The claim for the restoration to its invested capital of depreciation deducted on blast furnaces prior to their completion and use cannot form a basis of this suit because this ground was never presented to the Commissioner. Nor can the claim for depreciation on the linings of blast furnaces be allowed, first because it was presented after rejection of the claim by the Commissioner; and, second, because it was not included in the amendment of the general claim filed on June 21, 1927.

This view makes it unnecessary to discuss the other issues raised.

It results that plaintiff's petition must be dismissed. It is so ordered.