BALTIMORE & O. R. CO. v. UNITED STATES.

Civil No. 661.

District Court, D. Maryland.

April 7, 1941.

84

R. Kemp Slaughter, of Washington, D. C., for plaintiff.

Milford S. Zimmerman, Sp. Asst. to Atty. Gen., and Bernard J. Flynn, U. S. Atty., and T. Barton Harrington, Asst. U. S. Atty., both of Baltimore, Md., for defendant.

WILLIAM C. COLEMAN, District Judge.

This is a suit for the refund of income taxes paid by the plaintiff for the year 1924 in the amount of $275,337.36, with interest, which, since it is computable under the statute (26 U.S.C.A. Int.Rev.Code, § 3771) at six per cent for a period of more than fifteen years, amounts to $250,648.78, and approaches, therefore, in amount, the claim itself. The Government does not deny the fact of this over-payment, but resists the refund solely upon the ground that the time within which these taxes might have been refunded has expired except to the extent of $23,436.72, as to the return of which sum the Government raises no defense whatsoever except the reservation, to which the plaintiff has acceded, that this amount shall be subject to further check and verification by examination of plaintiff's records, which is still in progress.

The provision of the statute upon which the Government relies is contained in Section 281 of the Revenue Act of 1924, chapter 234, 43 Stat. 253, 26 U.S.C.A. Int.Rev. Acts, page 62, as follows: " * * * (b) Except as provided in subdivisions (c) and (e) of this section, (1) no such credit or refund shall be allowed or made after four years from the time the tax was paid, unless before the expiration of such four years a claim therefor is filed by the taxpayer, * * *."

An extension of time to June 15, 1925, having been granted to plaintiff by the Bureau of Internal Revenue within which to file its completed income tax return for the year 1924, on May 21, 1925, a completed return was filed showing a net income of $15,657,455.10 and a total tax due thereon of $1,957,181.89. The last installment of this tax, amounting to $489,295.48, was paid on December 15, 1925. Therefore, the statutory period as provided in the above quoted provision of Section 281(b) of the Revenue Act of 1924, for filing a claim for refund of all or any portion of this last installment, expired on December 15, 1929. The Government asserts that although the plaintiff did file a claim for refund within this period, namely, on February 2nd, 1929, such claim was in part general and in part specific, and that the amendments thereto which the plaintiff filed on January 24, 1936, and January 19, 1938, that is, after the expiration of the period of limitations but before rejection of the original claim by the Commissioner of Internal Revenue, cannot be treated as valid amendments to the original claim, and that therefore the entire claim, with the exception of the small portion of it above referred to, must be treated as barred by lapse of time.

There is filed in the case a lengthy agreed statement of facts, from which we take the following, showing the sequence of occurrences material to the present issue which took place subsequent to February 2, 1929, when, as above explained, plaintiff filed its original claim for a refund which was for an amount of not less than $177,271.32, or for "such greater amount as is legally refundable," the claim containing the further statement that " * * * taxpayer has not received a final report of assessment of taxes based on said audit [by the Commissioner of Internal Revenue] and is therefore unable to specify in detail all the items as to which claim for refund or abatement of assessment should

or will be filed." The claim further stated that the plaintiff "asserts that income tax has been unlawfully assessed and collected on the following items and other items of which taxpayer is without sufficient knowledge to incorporate herein, viz., * * *."

On February 4, 1929, and December 5, 1929, plaintiff executed and filed consents extending the period of limitation for assessment of income tax for the year 1924 to December 31, 1930.

On January 22, 1930, the Bureau sent plaintiff a letter with the advice that the determination of its tax liability for the year 1924 disclosed an over-assessment of the specific amount referred to in the claim as filed, namely, $177,271.32, but no over-assessment certificate has ever been issued to plaintiff nor has its claim of February 2, 1929, ever been denied or rejected by the Commissioner of Internal Revenue.

On February 2, 1932, there was pending an appeal from a deficiency assessment in taxes against plaintiff for the taxable year 1923 by the Board of Tax Appeals, which was finally dismissed by the Circuit Court of Appeals, 4th Circuit, on October 7, 1935 (Baltimore & O. R. Co. v. Helvering, 79 F. 2d 979), resulting in an increase in plaintiff's taxable net income for the year 1924 of $1,444,892.17. On January 24, 1936, plaintiff filed with the Collector of Internal Revenue a claim for refund, designated an amended claim, in the amount of $39,554.-01, this claim conforming in substance to the aforementioned determination by the Circuit Court of Appeals of plaintiff's taxes for the year 1923, in so far as the adjustments under that determination were applicable to the year 1924. Plaintiff's taxes for the year 1924 being still under audit by the Bureau, and plaintiff's original claim of February 2, 1929, never having been rejected, the amended claim of January 24, 1936, recited that "the taxpayer hereby amends, without withdrawal, the claim filed February 2, 1929 for $177,-271.32 substituting the following amounts and specifying the particular grounds for refund as now determined. * * *." To this amended claim there was annexed, and made a part of it, a copy of the statement which formed part of the claim of February 2, 1929, from which we have quoted. This claim of January 24, 1936, has likewise never been denied or rejected by the Commissioner.

In November, 1934, that is, prior to the filing of this claim, the Bureau had re-quested data from the plaintiff relative to plaintiff's deductions for retirements and abandonments taken on its return for 1924. Accordingly, preliminary data requested by the Bureau was submitted on November 15, 1934, and again on February 14, 1936. Thereafter, an exhaustive examination was made of plaintiff's books, records and accounts. Schedules of adjustments of depreciation, retirement and abandonment of equipment were prepared and currently examined and checked by the Bureau, as a result of which, the deduction taken by plaintiff in its tax return for the year 1924 for retirement and abandonment was decreased, and the depreciation taken by plaintiff was increased, with the result that plaintiff's taxes were found to have been overpaid for the year 1924 in the amount of $248,662.36. Therefore, on January 19, 1938, the plaintiff filed with the Collector an "amended claim" for this amount.

This claim contained recitals similar to those referred to, embraced in the preceding claim of January 24, 1936, with respect to the status of the plaintiff's original claim of February 2, 1929, and then recited that "The taxpayer hereby . amends, without withdrawal," that claim. This amended claim concluded with the following statement: "The claim of February 2, 1929 has not been rejected as of the date of filing this claim. In this claim the taxpayer asserted 'that its income tax returns for the year 1924 have been audited by the Commissioner of Internal Revenue, but the taxpayer has not received a final report or assessment of taxes based on said audit and is therefore unable to specify in detail all the items as to which claims for refund or abatement or assessment should or will be filed,' and further 'that income tax has been unlawfully assessed and collected on the following items and other items of which taxpayer is without sufficient knowledge to incorporate herein.' " In this claim reliance was had by specific reference upon the following ruling of the Commissioner under date of October 30, 1933 (Mimm. 4092, C.B. XII), to the effect that: "(b) A timely claim for refund based upon one or more specific grounds may not be amended after the bar of the statute to include other and different grounds, if, however, the claim gives notice, although in general terms, that aside from the specific grounds alleged an overpayment has been made in reference to other items, the claim may, prior to rejec-

tion thereof, be amplified by amendment as to such other items."

Following the filing of the claim just referred to, the Bureau made further examination of plaintiff's books, records and accounts, and concluded from further depreciation adjustment that plaintiff had over-paid its taxes for the year 1924 to the extent of $275,337.36. However, on March 5, 1940, plaintiff was advised by the Bureau that, in the opinion of its chief counsel, any refund for the year 1924 in excess of $23,436.72 was barred by limitations. On April 27, 1940, plaintiff filed the present suit.

To recapitulate: The Government admits that the plaintiff's taxable income for the year 1924 should be reduced by $2,202,-698.86, resulting in a tax over-payment for that year to the extent of $275,337.36 less $25,614.87, or approximately this figure, the exact amount to be determined by the pending audit of an item of bond discount. Nevertheless, the Government contends that it is prohibited from making the refund because barred by limitations. The Government takes the position that the claim of February 2, 1929, is to be treated as a specific claim, or at least as being a claim of mixed character, that is, one which is in part general and in part specific, and that such a claim is not susceptible of amendment after the period of limitations has expired. On its part, plaintiff contends that the full amount of $275,337.36 is legally refundable to it (1) because of the general provisions of its claim of February 2, 1929; (2) because the amendments thereto of January 24, 1936, and January 19, 1938, incorporated its general provisions; and (3) because under the continuous examination and audit of the accounts and records of plaintiff, without declination or rejection at any time of any one of the three claims, the Commissioner was endeavoring to determine finally the correct amount of plaintiff's over-payment of taxes for the year 1924, and to incorporate in such determination those items which plaintiff was unable, because of an audit in progress, to specify in detail in its claims for refund, and that, therefore, the last two claims were essentially, both in form and in substance, merely amendments to the original claim of February 2, 1929, against which the statute of limitations had not run, and thus has not run against such amendments.

■ The same basic question involved in the present suit has arisen in numerous cases, a number of which have been decided by the Supreme Court. In one of these, United States v. Andrews, 302 U.S. 517, page 524, 58 S.Ct. 315, page 319, 82 L.Ed. 398, the Court, in an opinion by Mr. Justice Roberts, has clearly stated the rule applicable to the present case as follows: "Where a claim which the Commissioner could have rejected as too general, and as omitting to specify the matters needing investigation, has not misled him but has been the basis of an investigation which disclosed facts necessary to his action in making a refund, an amendment which merely makes more definite the matters already within his knowledge, or which, in the course of his investigation, he would naturally have ascertained, is permissible. On the other hand, a claim which demands relief upon one asserted fact situation, and asks an investigation of the elements appropriate to the requested relief, cannot be amended to discard that basis and invoke action requiring examination of other matters not germane to the first claim." We are satisfied that the facts in the present case bring it within the first of the above statements.

In the Andrews case, supra, it is true that the second claim was held not to be properly an amendment to the first claim, but a separate one on a new and unrelated ground, and it was barred therefore by the statute which, in that case, was the two year limitation in the Revenue Act of 1928, c. 852, Sec. 322(b) (1), 45 Stat. 791, 861, 26 U.S.C.A. Int.Rev.Acts, page 436. The taxpayer in that case had made timely claim for over payment of income tax due to failure in the return to deduct for loss on worthless shares of certain corporations. Consideration and action on this claim was delayed pending the outcome of litigation believed to affect the claim, with the result that more than two years after it was filed, that is, after the period of limitations had expired, the claim was rejected in part and allowed in part, and refund made accordingly, prior to which but also after the expiration of the statutory period of limitations, the taxpayer filed an amended claim, including another over payment for the same year which resulted from returning, as dividends, payments received from another corporation, which were not dividends and should have been

reported as giving rise to a capital gain of less amount.

It is obvious that these facts are distinctly different from those in the present suit, because in the Andrews case the amendment was in fact a new claim based upon a situation "not germane to the first claim" and so the Court held. The same result was reached in United States v. Garbutt Oil Co., 302 U.S. 528, 58 S.Ct. 320, 82 L.Ed. 405, where an original claim was found to be specific, and the so-called amendment of it had completely shifted to a totally different ground.

Mr. Justice Roberts, in the Andrews case, supra, reviewed the various decisions of the Court in which the rule which he laid down, and which has been quoted above, was applied. It seems unnecessary to review here the facts in detail of any of these decisions. In two of them, United States v. Memphis Cotton Oil Co., 288 U. S. 62, 53 S.Ct. 278, 77 L.Ed. 619, and United States v. Factors & Finance Co., 288 U.S. 89, 53 S.Ct. 287, 77 L.Ed. 633, the taxpayer did not specify any ground in the claim first presented, but offered an amended claim after the period of limitations had expired, setting forth the reasons. Such amendments were held permissible. To the same effect is Moore Ice Cream Co. v. Rose, 289 U.S. 373, 53 S.Ct. 620, 77 L.Ed. 1265. In Bemis Bros. Bag Co. v. United States, 289 U.S. 28, 53 S.Ct. 454, 77 L.Ed. 1011 the mere addition, by an amendment to the original claim, of a prayer for alternative relief was held not to be a departure from the original claim and did not amount to a new and untimely claim and therefore constituted a proper amendment. In United States v. Henry Prentiss & Co., 288 U.S. 73, 53 S.Ct. 283, 77 L.Ed. 626, it was held that where there had been an original claim which did not challenge the Commissioner's determination of invested capital and an amendment filed after the period of limitations which did attack this determination, such amendment was in fact a new claim based upon a complete reversal of the taxpayer's former position and was therefore barred by limitations.

The facts in United States v. Factors & Finance Co., supra, may be said to be most closely analogous to the facts in the present case. The Court held that that case fell midway, or nearly so, between a situation where the original claim specifies no grounds and a case where the original claim specifies a particular ground, but the amendment is based upon a different ground, because in the Factors & Finance Company case the taxpayer did not specify any ground in the claim first presented but in the amendment set forth specific reasons. No statement of grounds for the original claim had been included, but after the period of limitations had expired, the amended claim was filed setting forth the grounds in detail and asking for a special assessment under Section 210 of the Revenue Act of 1917 (see chapter 63, 40 Stat. 300, 307). In considering this case, Mr. Justice Roberts in the Andrews case, supra, gives the following succinct summary (302 U.S. 517, 520, 521, 58 S.Ct. 315, 317, 82 L.Ed. 398): " * * * additional assessments were made subsequent to payment of the amount shown to be due by the respondent's return. After paying part of the sum so assessed the taxpayer filed a claim for abatement of the unpaid balance. In connection with that claim the Commissioner ordered a full examination of the taxpayer's affairs, which was made. While this audit was in progress the taxpayer filed a claim for refund, couched in general terms, stating that, as there had been no final audit of its return, the purpose of the claim was to save the taxpayer's rights under the statutes and permit the Commissioner to refund any excess paid beyond the amount found to be due. No statement of grounds for the claim was included. After the period of limitations had expired an amended claim was filed setting forth the grounds in detail and asking special assessment under section 210 of the Revenue Act in 1917, 40 Stat. 307. In the interval between the filing of the first and the amended claim the Commissioner had disposed of the claim for abatement but not of the claim for refund. After the receipt of the amendment the Commissioner considered the case on the merits and found that the taxpayer's invested capital could not be satisfactorily ascertained and that a special assessment should have been made under section 210 but he rejected the claim on the ground that the amendment was not timely. We held the amendment permissible. *The opinion points out that the very generality of the original claim required that the Commissioner's audit go into the question of invested capital and that, therefore, the more specific amendment called attention to no new matter not covered by the investigation the Commissioner had to make in examining the claim as originally filed.*" (Italics inserted).

With further reference to the Factors & Finance Co. decision, and the decision in United States v. Memphis Cotton Oil Co., supra, Mr. Justice Roberts, in the Andrews case, supra, continued (302 U.S. 517, 521, 58 S.Ct. 315, 318, 82 L.Ed. 398): "In each of these cases the claim failed to comply with a Treasury regulation requiring that the grounds for the relief demanded should be set forth under oath and in detail. We held that, while the Commissioner might promptly have rejected the claims for failure to comply with the regulation, such compliance was a matter he could waive and, *if he considered the merits, the claim was susceptible of any amendment which would not amount, under the rules of pleading in actions at law, to an alteration of the cause of action and would not require the Commissioner to make a new and different inquiry than that which he was called upon to make in order to consider the general grounds asserted in support of the claim as presented.*" (Italics inserted).

 The language of Mr. Justice Roberts just quoted and italicized is strikingly applicable to the present situation, because in plaintiff's original claim of February 2, 1929, grounds were specified to the extent indicated by the Commissioner in the process of his audit and such other grounds which might subsequently be developed by the Commissioner in that audit. The grounds asserted in the first amended claim of January 24, 1936, were not inconsistent with this original claim. Those grounds were amortization of bond discount; amount alleged to have been erroneously added to taxable net income by the Commissioner, representing income belonging to a certain class of company employees, and profit on sale of certain property transferred from year 1923 to year 1924. The same is true with respect to plaintiff's second amended claim of January 19, 1938. The only additional ground in this amended claim related to depreciation on rolling equipment, and this whole claim, incorporating the two previous claims, was based upon what was then thought to be the Commissioner's final determination of the entire tax liability of the plaintiff. Subsequently, however, the Commissioner found an additional over-payment, making the correct amount thereof $275,337.36, which is what the plaintiff is now claiming. Thus, the amendments "called attention to no new matter not covered by the investigation the Commissioner had to make in examining the claim as originally filed." Neither amendment amounted, "under the rules of pleading in actions at law, to an alteration of the cause of action and would not require the Commissioner to make a new and different inquiry than that which he was called upon to make in order to consider the general grounds asserted in support of the claim as presented." In short (quoting again the language of the rule laid down by Mr. Justice Roberts, in the Andrews case), we have in the present case a situation "where a claim which the Commissioner could have rejected as too general, and as omitting to specify the matters needing investigation, has not misled him but has been the basis of an investigation which disclosed facts necessary to his action in making a refund," and the amendments merely make "more definite the matters already within his knowledge, or which, in the course of his investigation, he would naturally have ascertained. * * *."

It is not without real significance in the present case that during the prolonged audit which extended over a period of more than twelve years, the Commissioner never questioned the form in which any of plaintiff's claims were presented; never denied that there were "other items of which taxpayer is without sufficient knowledge to incorporate herein," and never repudiated or rejected any of the claims on the ground that they did not comply with his regulations. By this we are, of course, not implying that the Commissioner was actually required to reject the claims for failure to state with particularity all of the grounds on which they were based; nor that after the period fixed by statute for the filing of claims the Commissioner had power to accept or to act upon claims, irrespective of whether they complied with or violated his regulations. See United States v. Garbutt Oil Co., supra. But we do decide that the particular circumstances of the present case and the intricacies and interlocking character of the items involved in the audit—all facts conceded to be true as evidenced by the procedure adopted by the Commissioner—are clearly indicative of the fact that the matters embraced in the amendments are germane to the first claim.

 It is further significant that there was in effect at the time the amended claims were filed a ruling of the Commissioner, to which plaintiff specifically referred in its second amended claim (Mimm.

4092, C.B. XII), which we have previously quoted, and which, by its express terms, covers a case such as the present one. While this ruling is not binding in the sense that it commits the Internal Revenue Department to the interpretation of the law which is here adopted, and which the Commissioner appears himself to have originally adopted (Helvering v. New York Trust Co., 292 U.S. 455, 54 S.Ct. 806, 78 L.Ed. 1361; Biddle v. Commissioner, 302 U.S. 573, 58 S.Ct. 379, 82 L.Ed. 431), it nevertheless tends to support the reasonableness of our conclusion.

When we look through form to substance and analyze the present facts in the light of the above quoted principles which the Supreme Court has laid down, we find this: That the taxpayer, due to the intricacies and the number of questions involved, considered that it could not determine with exactness the full extent of its claim for refund in the first instance. With this position the Commissioner obviously agreed, because the whole matter was taken under advisement for a period of years and prolonged, elaborate audits were required. Thereupon, the taxpayer, as a result of the accumulation of greater knowledge respecting its taxable status, believed that it had advanced to the extent of being able to substantiate its claim by more precise figures. Accordingly, it filed an amendment to its original claim but still asserted, since the Commissioner had neither rejected nor approved its claim, and since his audits were still proceeding, a right under its original claim to add an even further claim, should the disclosure of subsequent facts so warrant. The Government admits that the second amended claim, that is, the claim based upon depreciation of rolling equipment, was suggested by the review which the Commissioner had made of the case, up to the time of filing this claim.

We conclude that the position taken by the Government is based upon grounds that are unreasonable and too tenuous. The doctrine laid down by the Supreme Court is obviously intended to require equitable conduct on the part of the Commissioner, just as it is required on the part of the taxpayer. While there is no allegation in the present case, nor any evidence, that the Commissioner deliberately prolonged his investigations and audits; and while, likewise, the burden of proof in the present case is upon the plaintiff, we cannot blink the fact that the Government must act fairly with the taxpayer. The Government has been primarily responsible for the delayed action on the part of the taxpayer. The Commissioner could have rejected the various claims from time to time, and such action would have brought the various points to issue in a clear-cut way and would have enabled the taxpayer to determine whether or not to sue for refund.

We do not mean to be understood as saying that a taxpayer may play fast and loose with its claims for refund merely by employing in every case such language as the plaintiff has employed in its various claims. We merely decide that the particular facts in this case meet the requirements of the rule laid down by the Supreme Court for proper valid amendments regardless of their number, against which the statute of limitations will not run.

We have been referred by the Government to various other cases—decisions of Circuit Courts of Appeal and District Courts, which are alleged to support the Government's position. However, we believe that none of them actually does so, because the facts in those cases are clearly distinguishable. Such is especially true of Hanna Furnace Corporation v. United States, Ct.Cl., 31 F.Supp. 136, which the Government stresses.

For the reasons above given, judgment will be entered for the plaintiff for the full amount claimed, namely, $275,337.36, with interest in the amount of $250,648.78, or a total of $525,986.14, as allowed by the statute (26 U.S.C.A. Int.Rev.Code § 3771), from December 15, 1925, to February 17, 1941, at 6% per annum.