**BERCH v. UNITED STATES (two cases).**

No. 45283, 45284.

Court of Claims.

March 6, 1944.

Robert P. Smith, of Washington, D. C. (William Ristig and Smith, Ristig & Smith, all of Washington, D. C., on the brief), for plaintiff.

John A. Rees, of Washington, D. C., and Samuel O. Clark, Jr., Asst. Atty. Gen. (Robert N. Anderson and Fred K. Dyar, both of Washington, D. C., on the brief), for defendant.

Before WHALEY, Chief Justice, and WHITAKER, MADDEN, and LITTLE-TON, Judges.

WHITAKER, Judge.

In 1926 plaintiff S. H. Berch sold 11,000 shares of Class B stock of the Western Dairy Products Company. Plaintiffs filed separate individual income tax returns for the calendar year 1926 on a community property basis and the profit on the sale of this stock was returned as ordinary income. However, within two years from the time they paid their taxes they filed claims for refund on the ground that they were taxable on the profit received, not as ordinary income, but as a capital net gain at the rate of 12½ percent. These claims were rejected and plaintiffs brought these suits.

1. The profit is taxable as a capital net gain only if the capital asset had been held by plaintiff Berch for more than two years. He had not held this particular stock for more than two years, but he claims the right to tack on to the period he had held this stock the period he had held other stock for which he says it was received in exchange.

Section 208(a). (8) of the Revenue Act of 1926, 44 Stat. 9, 19, 26 U.S.C.A. Int.Rev. Acts, page 158, provides:

"* * * In determining the period for which the taxpayer has held property received on an exchange there shall be included the period for which he held the property exchanged, if under the provisions of section 204 the property received has * * * the same basis in whole or in part in his hands as the property exchanged. * * *"

Section 204, 26 U.S.C.A. Int.Rev.Acts, page 151, provides it shall have the same basis if acquired in the manner described in subdivision (b), (d), (e), or (f) of section 203.

Subdivision (b) (2) of section 203, 26 U.S.C.A. Int.Rev.Acts, page 148, on which plaintiffs rely, deals with a case where "stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization."

Under these sections plaintiffs can add to the period plaintiff S. H. Berch had held the Western Dairy Products stock the period he had held other stock if, pursuant to a plan of reorganization, he exchanged this other stock for the Western Dairy Products stock.

The facts relative to his acquisition of the latter stock are these: Prior to August 3, 1925, the Crystal Investment Company had owned all of the stock of both the Velvet Ice Cream Company and the Seattle Ice Cream Company. Eighty per cent of the stock of the Crystal Investment Company was owned by Kassel and Rebecca Gottstein Company, J. L. Gottstein, F. V. Fisher, and Associated Dairies, Inc. The other 20 percent was owned by the Berch Ice Cream Company, all of whose stock in turn was owned by S. H. Berch.

In July of 1925 S. H. Berch entered into an oral agreement with the other stockholders of the Crystal Investment Company to sell all the stock of the Velvet and Seattle ice cream companies, subsidiaries of the Crystal Investment Company, both his stock and theirs, for $1,250,000. Later, on August 3, 1925, Spencer Trask & Company, New York bankers, were given an option to purchase all of the stock of the Seattle Ice Cream Company and Velvet Ice Cream Company for $1,250,000. On the same date the plaintiff S. H. Berch entered into a separate agreement with Spencer Trask & Company, whereby he was to receive for his interest in the Seattle Ice Cream Company and the Velvet Ice Cream Company, held through the Berch Ice Cream Company and the Crystal Investment Company, not cash, but stock in the new company to be organized, to which the stock in the Seattle Ice Cream Company and the Velvet Ice Cream Company was to be transferred.

The option was exercised. The Crystal Investment Company was dissolved and its stock in the Velvet and Seattle ice cream companies was distributed to its stockholders. All of it, except that held by plaintiff, was transferred to Spencer Trask & Company for $1,000,000. The Berch Ice Cream Company was also dissolved, Berch receiving for his stock therein 20 percent of the stock of the Velvet Ice Cream Company and the Seattle Ice Cream Company.

From August 5, 1925, to October 8, 1925, all of the stock of the Velvet and Seattle companies was owned by plaintiff and Spencer Trask & Co., and all of this stock was transferred to the Western Dairy Products Company, organized on October 1, 1925, in return for stock of that company.

Plaintiffs are clearly entitled to tack on to the period S. H. Berch had held the Western Dairy Products Company stock the period he had held the stock of the Velvet and Seattle ice cream companies, as the Commissioner of Internal Revenue concedes, but this does not give them the necessary two years. In their petitions and briefs they treat the Berch Ice Cream Company stock and the stock in the Seattle and Velvet ice cream companies as one and the same, and claim the right to tack on the period S. H. Berch had held the Berch Ice Cream Company stock, although this stock was not exchanged for the Western Dairy Products stock.

Corporate entities cannot be so completely ignored. Plaintiff S. H. Berch did not acquire the Velvet and Seattle ice cream companies' stock until August 5, 1925; prior thereto this stock was owned by the Crystal Investment Company; nor did plaintiff S. H. Berch own any of the stock of the Crystal Investment Company. Eighty per cent of it was owned by J. L. Gottstein, Kassel and Rebecca Gottstein Company, F. V. Fisher, and Associated Dairies, Inc.; the other 20 per cent was owned not by plaintiff Berch, but by the Berch Ice Cream Company. We cannot ignore the corporate existence of the Berch Ice Cream Company and the Crystal Investment Company and treat plaintiff as the owner, prior to the liquidation of these two companies, of the stock of the subsidiaries.

Plaintiff S. H. Berch acquired the Velvet and Seattle ice cream companies' stock as a result of the liquidation of the Berch Ice Cream Company and the Crystal Investment Company. By the liquidation of the Berch Ice Cream Company he exchanged his stock in that Company for 20 per cent of the stock in the Crystal Investment Company, and by the liquidation of the Crystal Investment Company he exchanged his 20 per cent of the stock in that company for 20 percent of the stock in the Velvet and Seattle ice cream companies.

If these two exchanges of stock in liquidation come within the provisions of subdivision (b) (2) of section 203, supra, it may be that plaintiffs can add to the period S. H. Berch held the Western Dairy Products stock the period he held the Velvet and Seattle ice cream companies' stock, plus the

period he had held the Berch Ice Cream Company stock.

The Commissioner of Internal Revenue says the liquidation of neither the Berch Ice Cream Company nor the Crystal Investment Company comes within the provisions of the section because neither company was a party to the reorganization, and that, therefore, plaintiffs cannot tack on to the period S. H. Berch held the Western Dairy Products' stock the period he had held the stock in the Berch Ice Cream Company. He says their dissolution were not steps in the plan of reorganization. This is the issue.

Spencer Trask & Company desired to establish a dairy products company which would handle ice cream and other dairy products throughout the Pacific Coast. To carry out this plan it decided to acquire the stock in the Velvet Ice Cream Company and the Seattle Ice Cream Company, two companies manufacturing ice cream in Seattle, Washington. As stated, all of the stock of these two companies was owned by the Crystal Investment Company. Some of the stockholders of the Crystal Investment Company wanted cash for their indirect interest in the Velvet and Seattle companies and plaintiff Berch wanted stock in the new corporation to be organized. Therefore, the most convenient thing to do appeared to be to liquidate the Crystal Investment Company and to transfer to its stockholders the stock it held in the Velvet and Seattle companies. This was done. Spencer Trask & Company then paid cash to those stockholders who wanted cash for their holdings, and issued stock in the newly organized corporation to plaintiff Berch who wanted this stock.

Plaintiff Berch held his stock in the Crystal Investment Company through the medium of the Berch Ice Cream Company. The stock in the newly organized company could have been issued to the Berch Ice Cream Company in exchange for its holdings in the Velvet and Seattle companies acquired through the liquidation of the Crystal Investment Company, and plaintiff Berch would have owned the stock in the newly organized company through the medium of the Berch Ice Cream Company just as he had owned the stock in the Crystal Investment Company through the medium of the Berch Ice Cream Company. The plan of reorganization, therefore, did not require the dissolution of the Berch Ice Cream Company; its dissolution was a purely voluntary act on the part of plaintiff Berch, not necessitated by the plan of reorganization.

This being true, it does not seem that its dissolution and the transfer of its holdings to plaintiff Berch come within the provisions of section 203(b) (2) relied upon by plaintiffs.

The Berch Ice Cream Company was not a party to the plan of reorganization.

Had there been no plan of reorganization and plaintiff Berch had chosen on his own motion to dissolve the Berch Ice Cream Company and have it transfer to him its stock in the Crystal Investment Company, or the stock in the Velvet and Seattle ice cream companies acquired on dissolution of the Crystal Investment Company, it could hardly be said that such a transaction did not come within the provisions of section 201 of the Act, 26 U.S. C.A. Int.Rev.Acts, page 146, which provides for the taxation of the gain incident to the distribution of the assets of a corporation on liquidation. If this is so, we see no reason why the gain should not be subject to tax merely because this company was dissolved at the same time that a plan of reorganization was being carried out, its dissolution not being a necessary step toward the consummation of that plan.

Plaintiffs, conceding that section 203(b) (2) is applicable only if the dissolution of the company was a necessary step toward the consummation of the plan of reorganization (R. 34), undertake to show that it was a step in the plan because required by the provision of the contract prohibiting the individuals indirectly owning stock in the Velvet and Seattle companies from engaging in the ice cream business individually in the State of Washington for five years or from becoming an officer or stockholder in a corporation "engaged primarily in the manufacture or wholesaling of ice cream." But plaintiff Berch's ownership of stock in the Berch Ice Cream Company did not violate that provision of the contract because that company was only a holding company and had not been engaged in the business of manufacturing or wholesaling of ice cream for a number of years. So long as it did not do so this provision of the contract was not violated, notwithstanding plaintiff Berch's ownership of stock in it.

The dissolution of the Berch Ice Cream Company was not a necessary step in the plan of reorganization.

The Board of Tax Appeals (now the Tax Court) arrived at the same result in a case involving the sale of this Western Dairy Products stock in a later year. It said that the only agreement to which the Berch Ice Cream Company was a party was an agreement to sell, and that it was not a party to the agreement of the plaintiff Berch to take stock in the newly organized corporation. Plaintiffs in their briefs in this court criticize this holding and say that Berch's individual agreement to take stock in the new company was necessarily made on behalf of the Berch Ice Cream Company. Suppose this is true; in that event the Western Dairy Products Company's stock would have been issued to the Berch Ice Cream Company. If the matter had stopped there, it is probable that no gain or loss would have been recognized; but it would not have stopped there. Berch wanted to acquire the stock in his own name. To do so he would have had to liquidate the Berch Ice Cream Company, as he actually did. We are unable to see why the gain realized from such a liquidation would not be subject to the tax, since it was not a step pursuant to the plan of reorganization, but a step beyond it. The plan of reorganization was complete when the stock in the Velvet and Seattle ice cream companies was transferred to the Western Dairy Products Company and the required amount of the stock of the latter company was transferred to the Berch Ice Cream Company.

The liquidation of the Berch Ice Cream Company not being a part of the plan of reorganization, it does not come within the exceptions to section 201(c) of the Revenue Act of 1924, 43 Stat. 253, 255, 26 U.S. C.A. Int.Rev.Acts, page 3, which provides for the taxation of the gain derived on liquidation. It reads:

"(c) Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. The gain or loss to the distributee resulting from such exchange shall be determined under section 202, but shall be recognized only to the extent provided in section 203. * * *"

█ Since the transaction was not within the exceptions stated in section 203, 26 U.S.C.A. Int.Rev.Acts, page 4, the period of holding of the stock received on liquidation cannot be tacked on to the period the Western Dairy Products' stock was held.

This holding is in accord with an agreement between the parties with reference to the year 1925. The Commissioner of Internal Revenue in auditing plaintiffs' returns for that year ruled that the liquidation of the Berch Ice Cream Company and of the Crystal Investment Company was taxable, and assessed Mrs. Berch with additional taxes of $8,656.43, and found an overassessment of $3,031.04 against S. H. Berch. Both parties acquiesced in the Commissioner's action.

Plaintiffs rely on a decision of the 2nd Circuit Court of Appeals in Helvering v. Schoellkopf, 100 F.2d 415, to support their statements that if the liquidation of the Berch Ice Cream Company was a necessary step in the plan of reorganization it would be nontaxable. This is conceded. Sections 201 and 203 so provide. Our holding is based upon our opinion that it was not a necessary step.

█ 2. Plaintiffs' alternative proposition is: "If the liquidation of the Crystal Investment Company and the Berch Ice Cream Company in 1925 constituted a taxable transaction, then the value of the stock received in liquidation, which was exchanged for Class A and Class B stock of the Western Dairy Products Company, becomes the basis for determining gain or loss in the subsequent sale of said stock."

Plaintiffs are in no position to rely upon this ground because their claims for refund were based wholly on the ground that the profit as computed upon the valuation fixed by the Revenue Agent was taxable as a capital net gain instead of as ordinary income. In their claims they did not rely upon this alternative ground. This ground was first advanced on September 20, 1939, in a communication addressed to the Commissioner of Internal Revenue. This reads:

"Furthermore, we call your attention to the fact that the Class 'B' stock of the Western Dairy Products Company which you have valued at 50¢ a share for the purpose of determining gain or loss had an actual value at the time of the exchange in 1925 of approximately $10.00 a share. The value of 50¢ per share was an arbitrary value fixed by the underwriters but the first sales of this stock in 1925 ranged from $5.00 to $10.00 a share. Consequently, the amount of $125,366.98 representing profit from the sale of this stock, as shown in

your report, is overstated. If it is finally determined that the liquidation of the Berch Ice Cream Company in 1925 was not a part of the plan of reorganization, and constituted a taxable transaction, then the basis for determining gain or loss on subsequent sale of the stock received is the fair market value of the Class 'B' stock of the Western Dairy Products Company, which ranged from $5.00 to $10.00 a share, and the arbitrary value of 50¢ per share cannot be used as a base. Full facts and information regarding the value of this Class 'B' stock has previously been submitted to the Department and is on file in your office."

Plainly, this has no reference whatever to plaintiffs' position as set forth in their claims for refund and cannot be considered as an amendment thereof. When this communication was filed the statute had long since run and, therefore, plaintiffs are in no position to rely upon this ground. Wrightsman Petroleum Co. v. United States, 35 F.Supp. 86, 92 Ct.Cl. 217, certiorari denied, 313 U.S. 578, 61 S.Ct. 1095, 85 L.Ed. 1535; Hanna Furnace Corp. v. United States, 31 F.Supp. 136, 90 Ct.Cl. 439; United States v. Henry Prentiss & Co., 288 U.S. 73, 53 S.Ct. 283, 77 L.Ed. 626; United States v. Factors & Finance Co., 288 U.S. 89, 53 S.Ct. 287, 77 L.Ed. 633.

█ But aside from the bar of the statute, we do not think plaintiffs are entitled to recover. Plaintiffs say that if the liquidation of the Berch Ice Cream Company and the Crystal Investment Company was taxable, they have a right in determining the gain from the sale of the Western Dairy Products Company stock to use as a basis the value of the stock of the Velvet and Seattle ice cream companies at the time it was received in liquidation and that this value was $670,000; but plaintiffs agreed on the settlement of their tax liability for 1925 upon the basis of a valuation of $258,000 for this stock, and they are, therefore, in no position now to say that the value of this stock was $670,000. If its actual value was $670,000, as now claimed, plaintiffs' tax liability for 1925 would have been much greater than that assessed, but the statute against the assessment of additional taxes for this year has now run. Plaintiffs cannot take a position which is to their advantage in one year, and then change their position in a later year when they find it to their advantage to do so. Alamo National Bank v. Commissioner, 5 Cir., 95 F.2d 622, 623, certiorari denied, 304 U.S. 577, 58 S.Ct. 1047, 82 L.Ed. 1541; Naumkeag Steam Cotton Co. v. United States, 2 F.Supp. 126, 76 Ct.Cl. 687, certiorari denied, 289 U.S. 749, 53 S.Ct. 694, 77 L.Ed. 1495; R. H. Stearns Co. v. United States, 2 F.Supp. 773, 77 Ct.Cl. 264, affirmed 291 U.S. 54, 54 S.Ct 325, 78 L.Ed. 647; Daube v. United States, 5 F.Supp. 769, 78 Ct.Cl. 754.

Plaintiffs are not entitled to recover on either ground set forth in their petitions. Their petitions, therefore, must be dismissed. It is so ordered.

JONES, Judge, took no part in the decision of this case.